RATCLIFFE, STATE DEPARTMENT OF PUBLIC WELFARE
v. WILLIAMS.

4-9889                                        250 S. W. 2d 330

Opinion delivered June 30, 1952.

*Ike Murry*, Attorney General; *George E. Lusk, Jr.*, Assistant Attorney General, and *Ivan H. Smith*, for appellant.

*O. Wendell Hall, Jr.*, for appellee.

ED. F. McFADDIN, Justice. The question here presented is whether the Probate Court—in an adoption case, under § 56-101 *et seq.* Ark. Stats.—can proceed to hear and decide the case without the consent of the guardian of the minor.

The appellant is Mrs. Bernice G. Ratcliffe, Director of Child Welfare of the State of Arkansas. The appellees are Mr. and Mrs. Williams, who seek to adopt two minor children, Earl and Robert Franklin, aged five and six years, respectively. The Garland Probate Court appointed the appellant as the guardian of the two minors, with full right and authority to consent to adoption,

without notice to or consent of the natural parent or parents. (See § 56-120 Ark. Stats.) Appellant placed the two children in the home of the appellees, Mr. and Mrs. Williams, in Saline County. The Williams became attached to the little boys, and in January, 1952, filed in the Saline Probate Court, a petition for their adoption. This was a proceeding under § 56-101 *et seq.* Ark. Stats.

Appellant resisted the adoption petition, saying in her pleading:

"That said guardian has not given her consent to these petitioners to adopt said children and does not give her consent to said petitioners to adopt said children; that the written verified consent of said guardian to the adoption is necessary for this court to have jurisdiction of this matter; that this court is without jurisdiction to hear and determine this matter."

Notwithstanding such pleading, the Saline Probate Court held that it had jurisdiction to hear and decide the adoption case on the merits and from the evidence as might be developed. Appellant, by this appeal, disputes the correctness of such ruling. Assuming, without deciding, that the ruling of the Court was an appealable order, in order for appellant to present the question to us, nevertheless, we hold that the Saline Probate Court was correct in its ruling. Section 56-106 Ark. Stats. provides in part:

"Consent of parents or guardian.—(a) The adoption of a child shall not be permitted without the written consent verified by affidavit, of its parent or parents, if living, except as follows:

(b) The consent of a parent or parents may be dispensed with if the court, upon competent evidence, makes one of the following findings:

(1) The parent has abandoned the child for more than six (6) months next preceding the filing of the petition.

(II) The parent cannot be found.

(III) The parent is insane or otherwise incapacitated from giving consent.

(IV) A guardian of the child has been appointed by an order of the Probate or Juvenile Court giving the guardian authority to consent to adoption without notice to or consent of the child's natural parents. In this case, the written verified consent of the guardian shall be sufficient. . . ."

Appellant insists that in the case at bar, she, as the guardian, stands in the place of the parents, and that the Probate Court can make no order of adoption unless and until the appellant consents.[1] We hold appellant is in error. Even the consent of the parent may be dispensed with under (I) *supra,* if the parent has abandoned the child; under (II) *supra,* if the parent cannot be found; and (III) *supra,* if the parent is insane; or (IV) *supra,* if the guardian consents in lieu of the parent.

In short, the consent of the guardian is not jurisdictional, but is only one of the ways to dispense with the parent's consent. Either of the other mentioned alternatives is just as effective as the consent of the guardian. The jurisdiction of the Probate Court to act in adoption cases is not dependent on the willingness of the Welfare Director, as guardian of the minors, to consent to the proceedings. Section 56-105 Ark. Stats. so states, when it says that the report of the Welfare Department may aid the Court, "but without limiting its power. . . ."[2]

We affirm the order of the Saline Probate Court, which held that the appellant's objections did not defeat the Court's jurisdiction. From a final order granting or refusing adoption, based on the merits of the case, there may be an appeal.

[1] Among other cases, appellant cites a Pennsylvania case, *In Re: Daugherty's Adoption* (1948), 358 Pa. 620, 58 Atl. 2d 77; and a Minnesota case, *In Re: Mair* (1931) 184 Minn. 29, 237 N. W. 596. These cases are not persuasive here, because each of the cases is based on a statute which specifically requires the consent of the guardian to permit adoption.

[2] Some of the cases relied on by appellee as persuasive are those which come from states which have statutes similar to our statute, in that the consent of the guardian is not essential to a valid order of adoption. Some such cases are *In Re: Santos,* 185 Calif. 127, 195 Pac. 1055; *Leonard* v. *Honisfager,* 43 Ind. App. 607, 88 N. E. 91; and *In Re: McFarland,* 223 Mo. App. 826, 12 S. W. 2d 523. See, also, generally, I Am. Jur. 638 and Anno. in 104 A. L. R. 1464.

WARD, J., dissenting. I am in complete disagreement with the majority opinion and the conclusion reached therein for the reasons set out below.

1. *The Majority Opinion Examined.* It is stated that the cases of *In Re Daugherty's Adoption* and *In Re Mair* [cited in footnote (1) of the majority opinion as favoring appellant] are not persuasive because based on a statute which specifically requires consent of the guardian. This is true of the first cited case, but it is not entirely true of the second cited case. In the latter case the statute reads as follows:

"No such adoption shall be permitted without the consent of such parents of the child as may be living. In case neither of the parents is living . . . such consent *may* be given by the guardian . . ." (184 Minn. 29, 237 N. W. 597).

In my opinion the quoted statute is much like our own statute. In this case also the court observed that: "it [the statute] starts out with a mandatory requirement that no adoption shall be permitted without the consent of the parents." We call attention to this because that same provision is found in our own statute.

Next let us examine the authorities noted in footnote (2) relied on to sustain the majority opinion. For brevity and convenience we will discuss them in the order they appear in the footnote. (a) *In Re: Santos*; It was attempted to set aside an adoption because the child's guardian had not given his consent. The case turned on the point that the California statute made no reference to consent by a guardian, and is therefore no authority for the majority opinion. In this case as in many other cases it was stated that an adoption proceeding was not a common law proceeding but that the statute must be followed. (b) *Leonard* v. *Honisfager;* The gist of the decision in this case is found in the following words:

"The statutory provisions on the subject give the legal guardian no right to interfere with this power of the court, and the courts will read no such into the statute."

Also the opinion contains other language which is pertinent here:

"The subject of adoption of children is governed exclusively by statute and the statutory provisions of the different states on the subject are so widely variant that the decisions of the courts of other states construing their statutes on the subject can afford little or no light on the proper construction to be given our own. In fact, the provisions of our statute in reference to the adoption of children are so plain and simple that they admit of no construction."

In my opinion this statement applies to our own statute. (c) *In Re: McFarland* (223 Mo. App. 826, 12 S. W. 2d 525); This case is no authority for the majority holding because the statute provides that jurisdiction may be obtained by certain notices regardless of the consent of guardian or parent. In this case it was stated, referring to the Missouri adoption statute, "All sections of that act should be construed together and the manifest intent of the legislature declared to be the law." (d) We are unable to find anything in the Am. Jur. citation sustaining the majority opinion, but to the contrary. It was there stated that consent, where required, is ordinarily held an essential requisite to jurisdiction on the part of the court to make an order of adoption; and it was also stated that the written consent of a guardian cannot be deemed a legal and sufficient substitute for the consent of a natural parent. It will be noted however that our statute specifically provides that the consent of a guardian, appointed for that purpose, is a sufficient substitute. (e) The last citation to bolster the majority opinion is 104 A. L. R. 1464. We find nothing there to support the opinion. It is there stated that in the final analysis the question as to whose consent is necessary to validate an adoption proceeding resolves into a matter of statutory construction. The case of *Holmes* v. *Derrig,* 127 Ia. 625, 103 N. W. 973, is cited as holding that the consent of grandparents [where the father and mother were dead] having custody of a child was necessary to an adoption under a statute much less favorable to such a holding than our own statute.

The Iowa statute provided that if the parents were dead or had abandoned the child consent of adoption should be given by the mayor or the clerk of the district court. On page 1465 cases are cited where the courts have held that the guardian of a child must give his consent before adoption. We note here that in the case at bar the child not only had a guardian but it had a guardian specifically clothed [pursuant to statute] with the authority to consent to adoption.

*A Matter of Interpreting the Intent of the Statute.* Our courts have stated, as noted above, that the real issue is the proper interpretation of the appropriate statute. A portion of our statute is copied in the majority opinion and we will hereafter refer to other portions.

First let us interpret the quoted portion of our statute. It will be remembered that the court found that the conditions in (IV) obtained in this case, therefore to facilitate interpretation we will eliminate provisions (I), (II) and (III). The meaning then is clear that no child shall be adopted without the written consent of its parent or parents, if living, unless a guardian has been appointed with power to give consent, and in the latter instance the consent of the guardian shall be sufficient. If this language means anything it means that if such guardian does not give his consent then it will *not* be sufficient If it was not the intent of the legislature to substitute the consent of the guardian, in such instances, for the consent of parents, then the language used in (IV) is absolutely meaningless. If the statute means what the majority holds, then it was useless and meaningless for the legislature to put anything in (IV) except the first line which reads: ''A guardian of the child has been appointed.'' As a matter of fact, if the majority opinion is right, it was useless for the legislature to even put in the first line, because surely if the courts have jurisdiction to grant an adoption when a guardian has been appointed it would have the same jurisdiction if no guardian had been appointed. This all makes the majority opinion lead to an undesirable situation, as is shown by the following: Refer to Ark. Stats. 56-106 which is copied in the opinion;

as stated before the court has not found that divisions (I), (II) or (III) exist and the opinion deletes (IV) and yet the adoption is allowed to stand; this means, consequently, the court could permit adoption of a child whose father and mother are living, without notice to or consent from either of them, under any and all circumstances.

*The Majority Opinion Would Nullify Other Portions of the Adoption Statute.* If the majority is correct then the legislature was using idle and meaningless words when it provided [Act 369 of 1947, § 4 (e) (II)] that a petition for adoption must be verified and state the name ''of the parents or parent, except that, when a guardian has been appointed with authority to consent to the adoption without notice or assent by the natural parents it shall not be necessary to name the natural parents.'' The same thing must be said about section 20 of said Act 369 which provides for the appointment of a guardian ''with authority to consent to adoption. . .''

Also the majority opinion renders meaningless a portion of Act 215 passed in 1911 and now appearing as Ark. Stats. § 45-228 where it is provided:

''. . . that the guardian appointed or to be appointed shall be authorized to consent to the legal adoption of the child, and the court, upon the hearing, shall find it is to the best interest of such child that the guardian be given such authority, the court may in its order appointing such guardian, impower him to appear in court where any proceedings for the adoption of such child may be pending, and to consent to such adoption; and such consent shall be *sufficient* to authorize the court . . . to enter a proper order or decree of adoption. . . .''

By those supporting the majority view the argument might be advanced that the Welfare Department would not have the right to dictate to the Probate Court. Generally, I agree with this statement, but the matter before us does not raise that question. There is only one instance in which the head of the Welfare Department [just like parents] can withhold jurisdiction from the Probate Court and that is when she has been appointed guardian

with power to consent to adoption. It is pointed out that the appellant just *happens* to be that guardian in this instance, and that under the statutes any qualified individual might be appointed such a guardian. I can think of nothing more consoling to the parent of an unfortunate child than to know that he could select some trusted friend to supervise the adoption of his child when and if the occasion arose. The majority opinion takes away this right given by the legislature.

We cannot comprehend a view that renders meaningless legislative enactments that have been in our statutes for more than 40 years. The majority view does not comport with the meaning expressed in the simple language of the statute under consideration.

In my opinion this legislative provision for substituting a guardian for the parents of a neglected or unfortunate child is a wise one, and was intended solely for the best interest of the child and of society in general. Its clearly expressed intent and meaning should not be brushed aside unless some compelling legal reason exists for doing so. Certainly no such reason has been pointed out in the majority opinion. Any process of judicial interpretation which substitutes legal technicalities [and none exist here] for plain English language can lead only to confusion and more confusing technicalities.

Mr. Justice HOLT concurs in this dissent.