Christine C. LARSCHEID, Steven Larscheid,
Jon Moore, Charissa McClendon, and
Janet Ballard *v.* ARKANSAS DEPARTMENT of
HUMAN SERVICES; Hanna Jordon McClendon, *Minor*

00-320                                    36 S.W.3d 308

Supreme Court of Arkansas
Opinion delivered February 1, 2001

*Wood Law Firm*, by: *Rhonda Wood*, for appellants Christine C. and Steven Larscheid.

*Hall, Estill, Hardwick, Gable, Golden & Nelson*, by: *Curtis E. Hogue*, for appellant Jon Moore.

*Kathy L. Hall*, for appellee Arkansas Department of Human Services.

JIM HANNAH, Justice. This is a consolidated appeal of Jonathan Moore and Christine and Steve Larscheid[1]. Moore appeals the termination of his parental rights. The Larscheids appeal the denial of their petition for adoption and the trial court's order to delay a decision on future visitation until the trial court had received a report from the child's therapist. This matter comes to this court by certification from the court of appeals pursuant to Ark. Sup. Ct. R. 1-2(d)(2), (b)(1), (5), and (6), as presenting issues relating to construction of and interrelationship between Ark. R. Civ. P. 54(b) and Ark. R. App. P.—Civ. 2(c)(3). The question is

---

[1] While Charissa McClendon and Janet Ballard appear as appellants in the style of this appeal, they are not parties to this appeal.

whether there is a final order from which this appeal could be taken. We hold that the termination of parental rights and the denial of the adoption petition are final appealable orders and that the issue of visitation is part of the ongoing dependency/neglect case and, as such, is not ripe for appeal. We hold that the trial judge was not clearly erroneous in her decision to terminate parental rights and in denying the adoption petition and affirm.

*Facts*

Hanna was born August 9, 1995, to Charissa McClendon. It appears that from before Hanna's birth, her mother engaged in significant illegal drug usage, which continued after Hanna's birth and inhibited her ability to care for her child. Charissa's mother, Christine Larscheid, helped provide care for Hanna beginning sometime shortly after her birth. A babysitter, Janet Ballard, also provided care for Hanna beginning at three months of age to about three years of age. In the first months of Hanna's life, her mother would leave her with Christine. Charissa allowed Hanna to stay with Christine and then made demands that, if not fulfilled, resulted in her demand for return of the child, with which Christine complied, believing she had no legal right to deny the demand. Christine was aware that Charissa had problems with her care of Hanna.

Hanna first became the subject of court action in 1996 when the State Office of Child Support Enforcement filed a petition and obtained an order after Moore requested a paternity test, finding Moore the father and ordering child-support payments by payroll deduction. The next action occurred on August 24, 1998, when the Arkansas Department of Human Services filed a petition for dependency neglect in Washington County Chancery Court, Juvenile Division. The assertion of dependency/neglect was made based upon a July 25, 1998, medical examination showing sexual abuse. On October 29, 1998, an order finding Hanna dependent/neglected was entered. The goal of DHS at this time was reunification with her mother Charissa.

The sexual abuse was reported as a result of an exam at Washington Regional Medical Center. Hanna's babysitter had taken her to a pediatrician earlier that morning because the night before, she had found blood in Hanna's underwear. The babysitter had noticed

redness the day before that, but attributed it to a recent yeast infection. However, when she discovered blood in Hanna's underwear, she took her to the pediatrician, who examined her and sent her to Washington Regional for further examination.

The babysitter reported to the police that when she picked Hanna up, there were four men in Charissa's home, and that Charissa was apologetic and quite nervous about the men's presence. Charissa refused to identify the four men. Police found drug paraphernalia, including syringes, a pipe, baggies with a white powdery residue, a mirror with a white powdery residue, a roach, marijuana, and rolling papers in Charissa's home. In addition the home contained debris, a broken mirror, and broken toys.

Initially, on August 26, 1998, Hanna was placed with Christine. However, when Christine and her husband Steve separated, Hanna was removed and placed in foster care on October 13, 1998. On March 3, 1999, Hanna was placed with Susie and Brent Barrows, a great aunt and uncle in Tennessee. She has remained with the Barrows throughout the subject proceedings.

On November 16, 1998, Christine filed a petition to adopt in probate court in Washington County. This petition included consents to the adoption signed by Charissa and Moore. On January 14, 1999, Christine filed a motion to transfer in probate court, seeking to have that action consolidated with the pending action in chancery. A motion to intervene was filed by Christine in chancery court on January 20, 1999. The probate court ordered the transfer on January 25, 1999, pursuant to Ark. Code Ann. § 9-27-306(b)(1)(Repl. 1998), which provides that juvenile court has exclusive jurisdiction over adoption proceedings when there is any pending proceeding on delinquency or dependent/neglect. The Barrows filed a motion in chancery court on February 24, 1999, seeking placement of Hanna in their home during reunification attempts and served notice of their intent to seek adoption should the court terminate parental rights and find Christine unsuitable to adopt. On March 3, 1999, Christine and Steve Larscheid filed an amended petition for adoption adding Steve, as Christine's husband, to the petition. After several months of attempts to achieve reunification, DHS filed a petition for termination of parental rights on June 29, 1999. A summons was served on Hanna's father, Jon Moore, and he answered on July 15, 1999. After a hearing,

parental rights of both parents were terminated and the Larscheid's petition to adopt was denied by an order dated August 13, 1999. The order also provided that visitation between Hanna and the Larscheids would be determined based upon recommendation of Hanna's therapist. Along with the issue of visitation, the court noted in its order that other matters, such as development of a case plan for adoption, were still pending. The court specifically retained jurisdiction as required by statute and set the date for the next review hearing. Notices of appeal were filed by the Larscheids on September 7, 1999, and by Moore on September 13, 1999. The file does not indicate if a petition for adoption by the Barrows has been filed as yet.

*Final Appealable Order*

■ This case was certified to this court by the court of appeals on the question of construction of and interrelationship between Ark. R. Civ. P. 54(b) and Ark. Rule App. P.—Civ. 2(c)(3). The issue is whether the chancery court's order, which reserved for future consideration the visitation rights of the grandparents, is a final order from which an appeal may lie. The want of a final order is a matter that we raise ourselves, and under Ark. R. App. P.—Civ. 2(a)(1), we are limited to a review of a final judgment, decree, or order to avoid piecemeal litigation. *See also, McGann v. Pine Bluff Police Dept.*, 334 Ark. 352, 974 S.W.2d 462 (1998); *Fratesi v. Bond*, 282 Ark. 213, 666 S.W.2d 712 (1984).

■ This case is procedurally complicated by inclusion of an order on termination of parental rights, and an order on adoption, in a single court document that also addressed various other matters relating to Hanna's dependency/neglect case. There is no question that an order terminating parental rights is a final appealable order. Ark. R. App. P.—Civ. 2(c)(3)(C) provides, "In juvenile cases where an out-of-home placement has been ordered, orders resulting from the hearings set below are final appealable orders: . . . termination of parental rights." Hanna was placed out of her home. Thus, an order terminating parental rights was immediately appealable.

■ The issue of the Larscheids' visitation is a matter that is a part of Hanna's dependency/neglect case. The trial court did not rule on the visitation. The trial court's order stated that the Lar-

scheids' visitation would be determined based on the recommendations of Hanna's therapist and that the recommendations were to be received within seven business days. No decision has been made. The Larscheids' visitation issue is a part of Hanna's dependency/neglect case and plays no role in the separable orders on termination of parental rights and adoption. Ark. R. App. P.—Civ. 2(c)(3) lists what orders are final appealable orders in juvenile cases where an out-of-house placement has been ordered and visitation orders are not listed. Visitation issues will arise until DHS achieves reunification, closes its case, or until adoption is achieved. In this case, because the trial court did not order or deny visitation in the dependency/neglect case, there is no ruling on which an appeal might be taken on the issue of visitation.

■■ The Larscheids' adoption proceeding is a distinct and separate cause of action from Hanna's dependency/neglect case. The adoption proceeding was transferred from the probate court to chancery court pursuant to Ark. Code Ann. § 9-27-306(b)(1), which provides that juvenile court has exclusive jurisdiction over adoption proceedings when there is any pending proceeding on delinquency or dependent/neglected. This court has stated, "[F]rom a final order granting or refusing adoption, based upon the merits of the case, there may be an appeal." *Ratcliffe v. Williams*, 220 Ark. 807, 250 S.W.2d 330 (1952). There are numerous cases involving the denial of an adoption petition that this court has heard, but the question as to whether an order denying an adoption decree was a final order has not been raised or decided. Ark. Code Ann. § 9-9-216(a) (Repl. 1998) provides that an appeal can be taken from any final order or decree rendered under this subchapter. Ark. R. App. P.—Civ. 2(a)(2) provides that an appeal can be taken from "an order which in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action." In this case, the petition was heard on its merits, and the adoption was denied. There are no issues left to be determined in the adoption case. What could be more final? The order as to the adoption proceeding was final and, thus, appealable.

■ Ark. R. App. P.—Civ. 2(c)(2) provides that "pending an appeal from any case involving a juvenile out-of-home placement, the juvenile court retains jurisdiction to conduct review hearings." In this case, the trial court retains jurisdiction of the grandparents' visitation request in the dependency/neglect case. To allow the

appeal of the order denying the Larscheids' petition for adoption furthers the best interest of the child. It is the purpose of the court's rule in dependency/neglect cases to seek resolution and permanency in children's lives at the earliest possible date. To wait until final disposition of the dependency/neglect case before hearing the appeal of an order denying adoption would unnecessarily prolong the process and thwart the purpose of the court's rule.

## Notice of Appeal

■■ DHS asserts this court is without jurisdiction to hear Moore's appeal because his notice of appeal was filed on the thirty-first day. Moore's notice of appeal was filed on September 13, 1999, thirty-one days after the entry of the order on August 13, 1999. Ark. R. App. P.—Civil 4(a) requires the notice of appeal be filed within thirty days. The failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Ives Trucking Co. v. Pro Transportation, Inc.*, 341 Ark. 735, 19 S.W.3d 600 (2000). However, the thirtieth day was Sunday, September 12, 1999, a day on which the notice could not be filed. Filing on the following day is timely. *See* Ark. R. App. P.—Civ. 9.

## Standard of Review

■ Ark. Code Ann. § 9-27-341(b)(3) (Supp. 1999) requires an order terminating parental rights be based upon clear and convincing evidence. *Baker v. Arkansas Dept. of Human Servs.*, 340 Ark. 42, 12 S.W.3d 201 (2000). Our law is well settled that when the burden of proving a disputed fact in chancery court is by clear and convincing evidence, the question that must be answered on appeal is whether the chancery court's finding that the disputed fact was proven by clear and convincing evidence was clearly erroneous. *J.T. v. Arkansas Dept. of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *J.T., supra.* In resolving the clearly erroneous question, we must give due regard to the opportunity of the chancery court to judge the credibility of witnesses. *Baker, supra.*

*Termination of Parental Rights*

Moore asserts the chancery court was obligated to indicate during the proceedings the standard of proof being applied. Moore discounts the language of the court's order indicating that the standard of clear and convincing evidence was applied as "boiler plate" language inserted by counsel when the order was prepared.

In this case, Hanna came to the attention of the State because she suffered sexual abuse. As part of the investigation into the abuse, it was found that she was living under deplorable conditions. Her home was being used by her mother and her mother's friends to abuse drugs. Drugs, as well as drug paraphernalia, including syringes, were found in Hanna's home. Additionally, it was found that the home was physically unsafe for a small child. One report noted there was debris, broken toys, and a broken mirror in the house that might have caused severe injury. The home was found unsafe for a child of Hanna's age. Already, in her three years of life, Hanna had gone through a great deal, being cared for by a mother who abused drugs and who, in the opinion of the chancery court, had never put Hanna's interest before her own.

During the first year of Hanna's life, Moore provided no support. On August 12, 1996, after Moore requested a paternity test, the Office of Child Support Enforcement obtained an order from the chancery court in Washington County finding that he was the father, ordering him to pay child support by payroll deduction, and granting him reasonable visitation. Moore never took any action to protect Hanna and to remove her from this situation. Moore asserted he tried unsuccessfully to find her. However, he was paying child support, and he could have found her address. He had contact with Charissa and Christine. This excuse is not persuasive. When asked, Moore signed a consent that Hanna be adopted. Moore knew in late 1998 that Hanna was the subject of a dependency/neglect case in Washington County and was in foster care. Moore never asked to intervene in the dependency/neglect case requesting that custody of Hanna be placed with him. Moore did not make an appearance in this proceeding until he was served in July 1999 with notice that DHS was asking that his parental rights be terminated. Moore had seen Hanna twice in the last year, and that included the contact Moore had with Hanna in court the day of the hearing. The trial court found Moore had failed to maintain

meaningful contact with Hanna, and that he failed to avail himself of options to locate Hanna, including reopening the paternity case. The trial court found that Hanna had lived outside of Moore's home for more than a year. Actually, Hanna never lived in his home. The trial court found that it was in Hanna's best interest that Moore's parental rights be terminated.

We cannot say that the trial court was clearly erroneous. There is clear and convincing evidence that it is in the best interest of Hanna that Moore's parental rights be terminated.

*Permanency Plan*

Moore asserts that the parental termination was in violation of Ark. Code Ann. § 9-27-341(b)(1) (Supp. 1999) because the required permanency plan was not produced or followed. He asserts that any permanency plan required consideration of him as Hanna's biological father. Moore asserts error because no evaluation of him or his home was undertaken. Moore is mistaken as to the purpose and requirements of the plan.

The plan referred to by Moore is discussed in Ark. Code Ann. § 9-27-338 (Supp. 1999). Under that code section, the court is required, when the child has been out of the parent's home for twelve months or within thirty days of an order finding reunification is no longer the goal, to develop a permanency planning report outlining the department's recommendations. Ark. Code Ann.§ 9-27-338(a)(1) and (2). A hearing is then held wherein the court determines that the permanency goal is reunification with the parent or a plan for termination of the parental rights. Ark. Code Ann. § 9-27-338(a)(3).

Up until DHS moved for termination of parental rights, the goal was reunification of Hanna with her mother. Hanna was living with her mother, her legal custodian, when she suffered the abuse. That was the home from which she was removed. Until DHS moved to terminate parental rights in June 1999, DHS was unaware of Moore or his whereabouts and the goal was to reunify mother and daughter. As soon as DHS moved for termination of parental rights, Moore was served and given notice. The Court Report Addendum states that the permanency plan should be that the child "remain in foster care at her relative placement so she may

achieve some stability as far as a home in a place where she can feel relaxed and comfortable without fear that someone may allow her to go with her mother and be hurt again." Moore could have petitioned for custody at any time in the paternity action, he could have sought placement of Hanna in this proceeding. In fact he was aware Hanna was in foster care in 1998 and did nothing. Because of Moore's lack of interest and failure to take steps to intervene on behalf of Hanna, he cannot now complain about a court report filed on the date of the termination hearing. Just because DHS was unaware of Moore or his whereabouts during this proceeding up until just before the termination hearing, does not mean that they did not have an appropriate placement plan for Hanna. There was an appropriate permanency placement plan for Hanna when the trial court considered the termination of parental rights. DHS asserted, and the court found, that Moore's parental rights should be terminated. The trial court did not commit error.

### Denial of Adoption Petition

The Larscheids argue that the trial court's decision to deny their adoption petition was clearly erroneous. They argue that the trial court failed to recognize that they stood *in loco parentis* to Hanna and that the court completely ignored the expert testimony of Dr. Fiatak, a clinical psychologist. The trial court initially placed Hanna with the Larscheids on August 26, 1998. Subsequently, at a hearing Christine failed to tell the trial court that she and Steve were separating because of domestic abuse. The trial court, on October 13, 1998, removed Hanna from the Larscheids' home and placed her in foster care. Hanna's mother had a very unstable life and was involved with drugs throughout Hanna's life. Christine did nothing to protect Hanna or to take Hanna out of the situation. Christine had continued to involve Charissa in Hanna's life. Despite Christine's testimony at the last hearing that Charissa would not be a part of Hanna's life, there was sufficient evidence that Christine would continue to allow Charissa to be involved in Hanna's life. This assertion is contrary to the trial court's findings that it was in the best interest of Hanna to terminate Charissa's parental rights. Christine had difficulty with her own three children, as evidenced by Christine's testimony that Charissa turned out the best. It should be noted that the court-appointed special advocate and Hanna's attorney both recommended that the adop-

tion petition be denied. We cannot say the trial court was clearly erroneous in finding that it was in Hanna's best interest to deny the adoption.

Affirmed.