Judy Ann BEARDEN *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 00-206                                              35 S.W.3d 360

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered December 20, 2000
[Petition for rehearing denied January 24, 2001.]

*Robert L. Herzfeld, Jr.*, for appellant.

*Kathy L. Hall*, for appellee.

JOSEPHINE LINKER HART, Judge. The Arkansas Juvenile Code of 1989 provides that an indigent parent must be afforded the right to the assistance of counsel in proceedings to terminate parental rights.[1] *See* Ark. Code Ann. § 9-27-316(h) (Supp. 1999). Before us is the question of whether an indigent

---

[1] We note that the United States Supreme Court held in *Lassiter v. Department of Social Servs.*, 452 U.S. 18 (1981), that there is no presumptive due process right to counsel for indigent parents in termination-of-parental-rights proceedings.

parent who has been appointed counsel in a proceeding to termi-
nate his parental rights pursuant to Ark. Code Ann. § 9-27-341
(Supp. 1999), has a right to proceed without counsel. Stated differ-
ently, at issue is whether the law forces an indigent parent in a
proceeding to terminate parental rights to keep a court-appointed
attorney when he insists that he wants to conduct his own defense.
We conclude that the law does not do so and, therefore, reverse and
remand.

The Arkansas Department of Human Services (DHS), on
November 26, 1997, petitioned the juvenile court for emergency
custody of Judy Ann Bearden's younger child, then several days later
petitioned the court seeking custody of her elder child. The under-
lying claim made by DHS was that Bearden had a history of cocaine
use and had no financial resources, and that her young daughter,
who was born prematurely on November 12, had special needs that
Bearden was unable to satisfy. At the probable cause hearing, the
chancellor appointed an attorney to represent Bearden, but at the
trial on the termination petition, she stated that she desired to
represent herself. The chancellor briefly inquired as to the reason
for her request, but ultimately required that she be represented by
her court-appointed attorney.[2]

---

[2] The colloquy was as follows:

COURT: I appointed Mr. Herzfeld to represent you, Ms. Bearden.

BEARDEN: Yeah, I know that.

COURT: And he's talked to you, I know at least, several times. Has he explained to you what the purpose of this hearing is?

BEARDEN: Yes, he did.

COURT: He indicated to me just moments ago that he thought you weren't interested in him representing you, is that true?

BEARDEN: Yes, it is, but I really don't know what to do, to be honest with you. I've never heard anything or seen anything like this in my life.

COURT: I know. That's why I appointed Mr. Herzfeld to represent you. I mean, I certainly won't force him to if you are going to insist that he not.

BEARDEN: I think I would rather represent myself.

COURT: Okay. You just got through telling me you didn't have any idea what was going on here and you've never been involved in anything like this in your life.

BEARDEN: I said I've never seen or heard of a case like this before where . . . .

COURT: Why wouldn't you want Mr. Herzfeld to represent you? He's a licensed attor-ney who does know what's going on.

BEARDEN: He does, I know. I do, too. I know what's going on, too, sir.

At the conclusion of the trial, the chancellor granted DHS's petition to terminate Bearden's parental rights. On appeal, Bearden argues that the chancellor erred by denying her the right to represent herself and by finding that by clear and convincing evidence her parental rights should be terminated. We do not address appellant's second point on appeal inasmuch as we reverse and remand on the first issue.

■ On review of this chancery matter, "the whole case is open for review; therefore, all issues raised in the court below are before us for decision, and trial *de novo* on appeal . . . involves determination of both fact questions and legal issues." *Bradford v. Bradford*, 34 Ark. App. 247, 248, 808 S.W.2d 794, 795 (1991). *See also Ferguson v. Green*, 266 Ark. 556, 564, 587 S.W.2d 18, 23 (1979); *Lewis v. Lewis*, 255 Ark. 583, 502 S.W.2d 505 (1974);*Nolen v. Harden*, 43 Ark. 307 (1884). On *de novo* review, however, we will reverse only on grounds properly argued by an appellant. *See, e.g., Country Gentlemen, Inc. v. Harkey*, 263 Ark. 580, 569 S.W.2d 649 (1978).

### I. Right to waive assistance of counsel

■ The pertinent part of Act 1227 of 1997, as codified at Ark. Code Ann. § 9-27-316(h)(2) (Supp. 1999), states:

> Upon request by a parent or guardian and a determination by the court of indigence, the court shall appoint counsel for the parent or guardian in all proceedings to remove custody or terminate parental rights of a juvenile.

A similar right to the assistance of counsel is afforded juveniles pursuant to Ark. Code Ann. § 9-27-316(a)-(b), although the right can be waived by a detailed process as provided in Ark. Code Ann. § 9-27-317 (Supp. 1999). There is, however, no similar statutory process for an indigent parent to waive his right to counsel expressed in Ark. Code Ann. § 9-27-316(h). Consequently, we are faced with what Cardozo might refer to as a "gap" in the statute. We, therefore, "as the interpreter for the community of its sense of the law and order must supply omissions, correct uncertainties, and

---

COURT:   Well, you don't want him to represent you? I'm going to order that he represent you anyway.

harmonize results with justice through a method of free decision...." Benjamin N. Cardozo, *The Nature of the Judicial Process* 16 (1921). Accordingly, we conclude that an indigent parent who has been appointed an attorney has the right to waive the assistance of legal counsel in termination cases such as this, and therefore, we reverse.

■ We first look to the words used by the Arkansas General Assembly. A plain reading of Ark. Code Ann. § 9-27-316, requires that a two-fold process occur prior to the appointment of a legal counsel — a request by the parent and a finding of indigence. It is the first requirement that is of greater interest to us. This requirement demonstrates that the General Assembly intended that the indigent parent have some role or power with regard to the decision of whether legal counsel would be appointed for him. Moreover, there is no indication that the General Assembly intended that this power would be limited in some manner or would expire at some point in time. In our view, within the scope of this power must exist the ability to reject the assistance of counsel.

■ A second consideration is that the right to waive counsel is consistent with common sense and avoids an absurd result. *See Green v. Mills*, 339 Ark. 200, 205, 4 S.W.3d 493, 496 (1999) ("[T]his court does not engage in interpretations that defy common sense and produce absurd results."). The General Assembly intended to place a burden on the State by forcing it to bear the cost of the indigent parent's legal representation in parental termination cases such as this. To force an indigent parent to accept legal representation in termination proceedings when there is an expressed desire to decline such an offer, would transform their *right* into a *burden*. There is a conspicuous lack of authority to justify a determination that the General Assembly intended to hinder a parent that way.

Finally, this view harmonizes the right to waive counsel with similar rights in analogous cases. In *Johnson v. Zerbst*, 304 U.S. 458, 463 (1938), the United States Supreme Court recognized that the Sixth Amendment right to the assistance of counsel included the corresponding right to waive the assistance of counsel.[3] Further-

---

[3] Contrary to appellant's argument, *Johnson*, in our view, provides a more useful analogy to the case at bar than *Faretta v. California*, 422 U.S. 806 (1975). In *Johnson*, the

more, a number of jurisdictions have accepted, in cases similar to the case at bar, a right to waive counsel in one form or another. *See In re G.L.H.*, 614 N.W.2d 718 (Minn. 2000) (affirming trial court's determination that parent had waived statutory right to counsel in action brought by county to terminate parental rights); *In re Heller*, 669 A.2d 25 (Del. 1995) (holding that there was no procedural due process violation to allow mother to waive right to counsel and proceed *pro se* in a termination of parental rights case brought by Delaware); *In re K.D.H.*, 871 S.W.2d 651 (Mo. Ct. App. 1994) (affirming trial court's determination that by her actions a mother had waived her right to counsel in parental termination case because she failed to cooperate with her court-appointed attorney); *Keen v. Marion County Dep't of Public Welfare*, 523 N.E.2d 452 (Ind. Ct. App. 1988) (affirming trial court's determination that parent had waived the right to assistance of counsel in parental termination case brought by county); *In re Myers*, 58 Or. App. 622, 650 P.2d 113 (1982) (affirming trial court's determination that father knowingly waived right to counsel in parental termination case brought by Oregon).

## II. Right of self-representation

■ We next address the question of whether Bearden possessed an independent right of self-representation. In our view, this right does not arise automatically from the right to waive the assistance of counsel; on the contrary, it must be independently established.

■ Although neither the Arkansas Constitution nor our state statutes specifically provide for a general right of self-representation for all purposes, we conclude that in Arkansas an individual possesses such a right.[4] In criminal trials, a defendant is entitled to

---

Supreme Court referred to the applicable positive law that established a right to counsel — the Sixth Amendment — and acknowledged that there was a corresponding right to waive the assistance of counsel in federal court. Similarly, in the case at bar we are called upon to determine whether under the applicable positive law that establishes a right to counsel — Ark. Code Ann. § 9-27-316 — a party has a corresponding right to waive that right in an Arkansas court. The issue in *Faretta*, however, was whether the Constitution forbids a State from forcing a lawyer upon a criminal defendant, which is an entirely different issue.

[4] This problem does not exist under federal law because the long-standing right of self-representation in federal courts is codified at 28 U.S.C. § 1654 (1982), which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases

represent himself commensurate with *Barnes v. State*, 285 Ark. 565, 568, 528 S.W.2d 370, 373 (1975) ("Our own cases have clearly recognized the right of a defendant under our constitution to conduct his own defense in a criminal trial . . . if he elects to do so.")[5] Likewise, our state law extends the same right to parties in civil cases, as evidenced by our rules of civil procedure that contemplate parties exercising the right of self-representation. *See* Ark. R. Civ. P. 11 ("A party who is not represented by an attorney shall sign his pleading, motion, or other paper . . . ."). *See also Arkansas Bar Ass'n v. Union Nat'l Bank*, 224 Ark. 48, 51, 273 S.W.2d 408, 410 (1954) ("It is generally conceded that an individual who is not a licensed attorney can appear in the courts in what is commonly conceded to be practicing law provided he does so for himself...."); *Stewart v. Hall*, 198 Ark. 493, 495, 129 S.W.2d 238, 239 (1939) ("Litigants have a right to represent themselves...."). The right of self-representation, however, is not extended to all parties in Arkansas courts. For example, it is well-settled that *most* corporations must be represented by an attorney in court proceedings. *See, e.g., Jordan v. Thomas*, 332 Ark. 268, 269, 964 S.W.2d 399, 400 (1998).

Few in the legal community would doubt that in most cases such as this, a trained attorney would provide an indigent parent with a better defense against the State's efforts to terminate parental rights than a *pro se* defendant. Nevertheless, we do not question the wisdom of such a decision inasmuch as it is not our decision to make. To defend against such efforts is profoundly personal; after all, it is the parent who faces the potential severing of the natural parent-child relationship. To impose an attorney on such a person will undoubtedly intensify his belief that the law plots against him. Moreover, we are mindful that it is possible that an indigent parent could present a more effective defense than that which would be made by a court-appointed attorney.

■■ Although we conclude that an indigent parent who has been appointed counsel does have a right of self-representation in cases such as this, we do not hold that this right is absolute. We are compelled to balance this right against the best interests of the child,

---

personally or by counsel . . . ."

[5] We recognize, of course, that commensurate with *Faretta v. California*, 422 U.S. 806 (1975), a state is forbidden under the Fourteenth Amendment from forcing a lawyer upon a criminal defendant.

who faces the potential loss of the relationship with a natural parent. However, the interests of the children in this case were represented by an attorney ad litem appointed by the chancellor, commensurate with Ark. Code Ann. § 9-27-316(f). Accordingly, we remand this matter for further action not inconsistent with this opinion.

Reversed and remanded.

PITTMAN and STROUD, JJ., agree.

GRIFFEN, J., concurs.

KOONCE and MEADS, JJ., dissent.

MARGARET MEADS, Judge, dissenting. I cannot agree with the majority to reverse this case.

In the first place, neither *Faretta v. California*, 422 U.S. 806 (1975) (holding that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to represent himself without counsel when he voluntarily and intelligently elects to do so), nor *Lassiter v. Dept. of Soc. Servs. of Durham County, North Carolina*, 452 U.S. 18 (1981) (holding that an indigent litigant's right to appointed counsel has been recognized to exist only where she may be deprived of her physical liberty; that the Constitution does not require the appointment of counsel for indigent parents in every parental-status termination proceeding; and that the decision whether due process calls for the appointment of counsel is to be answered in the first instance by the trial court, subject to appellate review), which are relied upon by appellant, offers any authority for the proposition that one has a right to a *pro se* defense in termination-of-parental-rights cases. Further, appellant has offered no authority for her argument that the right to have or waive counsel in termination cases is analogous to the right to have or waive counsel in criminal matters. We have repeatedly admonished appellants that we will not do their research for them, and that we will affirm when an appellant's argument is neither supported by legal authority nor apparent without further research. *Hopper v. Garner*, 328 Ark. 516, 944 S.W.2d 540 (1997).

Further, Arkansas has no statutorily created right of self-repre-

sentation as does federal law. *See* 28 U.S.C. § 1654 (West 1994).[1] Arkansas Code Annotated section 9-27-316(h) (Supp. 1999), which creates the right to appointed counsel for indigent parents in termination cases, does not provide a waiver of this right. Had the legislature intended to provide for waiver, it could have done so. *See* Ark. Code Ann. § 9-27-317(a) (Supp. 1999) (providing for waiver of the right to counsel at a delinquency or family-in-need-of-services hearing). Whether such a right to waiver would be wise in termination-of-parental-rights proceedings and whether an indigent parent has a right to proceed *pro se* in termination proceedings is a matter for the legislature, especially in light of the welfare of the children involved.[2]

For these reasons, I respectfully dissent. I am authorized to state that Judge KOONCE joins.

---

[1] 1n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, they are permitted to manage and conduct causes therein.

.[2] Termination-of-parental-rights cases involve not only the parent, but a consideration of the best interests of the children involved. The parent is not the only person who stands to lose something. Thus, there are other third-party rights to be considered.