Christopher BATTISHILL and Jennifer Battishill *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 01–845 82 S.W.3d 178

Court of Appeals of Arkansas
Division III
Opinion delivered June 19, 2002

*Mark Rees*, for appellants.

*Dana McClain*, for appellee.

L ARRY D. VAUGHT, Judge. Christopher and Jennifer Battishill appeal from the trial court's order terminating their parental rights as to their three children. Appellants argue that the trial judge erred in finding that they had waived their right to counsel; in finding that their parental rights should be terminated as to each child; and in terminating their rights as to their youngest child without adjudicating him dependent-neglected. We reverse on the first issue and therefore do not address the remaining issues on appeal.

On April 9, 2000, the termination hearing was held, and appellants each proceeded pro se. Appellants' parental rights to each of their three children were terminated based on the finding

of the trial court that a return of the children to the family home was contrary to their health, safety, and welfare.

█ The United States Supreme Court has found that there is not an absolute due process right to counsel in all parental-termination proceedings. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981). The Court acknowledged that due process has never been, and perhaps never can be, precisely defined, and concluded that "applying the due process clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Id.* at 24.

In *Lassiter,* the Court specifically left the decision as to "whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject of course to appellate review." *Id.* at 31. The Court then went on to note that "it is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements as the facts are susceptible of almost infinite variations." *Id.* at 32. However, in *Lassiter,* the Court noted two relevant factors in its threshold determination that "fundamental fairness" did not require a due process right to counsel 1) the case presented no specially troublesome points of law, and 2) presence of counsel could not have made a determinative difference for petitioner.[1] Finally, the Court recognized that although the Fourteenth Amendment imposes on the states the standards necessary to ensure that the judicial process is fundamentally fair, a wise public policy may be for a state to require higher standards than those minimally tolerable under the Constitution. *Id.* The Court offered a final note that thirty-three states and the District of Columbia provide statutorily for the appointment of counsel in termination cases; however, they noted that these heightened stan-

---

[1] As Judge Baker's concurrence points out, the case at bar does present troublesome points of law, and the presence of counsel could have made a determinative difference in the outcome of the case.

dards are not constitutionally required, but are merely "enlightened and wise." *Id.* at 34.

■ Therefore, based on the *Lassiter* precedent, our initial inquiry in an indigent's right to counsel in a termination-of-parental-rights case must be whether or not "fundamental fairness" requires the appointment of counsel. The dissent in *Lassiter* contends that "fundamental fairness" requires appointment of counsel in every case where a relationship between a parent and a child is being permanently severed. It is our opinion that the Arkansas General Assembly has come to the same conclusion by passing Arkansas Code Annotated section 9-27-316(h) (Supp. 2000), which provides for the appointment of counsel in all parental-termination proceedings upon the request of the parent after being advised of the right by the court, thus preempting a fundamental fairness determination by the trial court prior to the due process right attaching.

■ Accordingly, our supreme court has found that a waiver of the fundamental right to the assistance of counsel is valid only when 1) the request to waive the right of counsel is unequivocal and timely asserted; 2) there has been a knowing and intelligent waiver of the right to counsel; and 3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Bearden v. Arkansas Dep't of Human Servs.,* 344 Ark. 317, 42 S.W.3d 397 (2001). In order to effectively waive counsel the parent must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and that he has made his choice with his eyes open." *Bledsoe v. State,* 337 Ark. 403, 406, 989 S.W.2d 510, 512 (1999) (citing *Faretta v. California,* 422 U.S. 806 (1975)). The determination of whether there has been an intelligent waiver of the right to counsel depends on the particular facts and circumstances of each case, including the background, the experience, and the conduct of the accused. *Id.* Every reasonable presumption must be indulged against the waiver of a fundamental constitutional right to counsel. *Daniels v. State,* 322 Ark. 367, 372, 908 S.W.2d 638, 640 (1995).

Interestingly, in *Bearden*, our supreme court recognized the mother's statutory right to counsel in her termination proceeding, pointed out that the trial court failed to determine whether the due process right to counsel also attached to her particular case, and specifically declined to make its own determination regarding her due process right to counsel during the proceeding. However, the supreme court reversed this court and affirmed the trial court's ruling by determining that *if* the trial court had accepted the mother's waiver of her right to counsel, it would have erred because her request did not *satisfy constitutional standards for the waiver of counsel.* (Emphasis added.)

In the case at bar, we must determine if the appellants' waivers were both unequivocal and knowingly and intelligently offered. Here, Mrs. Battishill informed the court that she did not feel that her attorney had represented her "to the best of his ability," and then she told the court that she felt that she could represent herself. The trial court then began to inquire about the appellants' decisions to proceed pro se. As to Mrs. Battishill, the court made the following inquiry:

> COURT: ... Miss Battishill, do you no longer want Mister Williams to represent you in these proceedings?
>
> Ms. BATTISHILL: No, I don't.
>
> COURT: And why is that?
>
> Ms. BATTISHILL: I don't feel he represented me to the best of his ability.
>
> COURT: I need something more than that.
>
> \* \* \*
>
> Ms. BATTISHILL: I feel I can represent myself better.
>
> \* \* \*
>
> COURT: Do you understand that the Department of Human Services has now filed a petition seeking to terminate your parental rights?
>
> Ms. BATTISHILL: Yes.

COURT: Okay. You want to represent yourself in this matter?

MS. BATTISHILL: Yes sir.

COURT: So you want to discharge Mister Williams as your lawyer?

MS. BATTISHILL: Yes sir.

COURT: And represent yourself?

MS. BATTISHILL: Yes sir.

COURT: Do you understand how serious this matter is?

MS. BATTISHILL: Yes sir.

\* \* \*

COURT: . . . I think I heard you some comment to the effect that you wanted another attorney besides Mister Williams?

MS. BATTISHILL: Yes sir.

COURT: Which is it?

MS. BATTISHILL: I would like a different attorney.

\* \* \*

COURT: Do you feel like there's such a conflict between you and Mister Williams that you can't continue with him being your attorney?

MS. BATTISHILL: Yes sir.

\* \* \*

COURT: All right, Miss Battishill, I'm going to grant your request that Mister Williams be relieved as your attorney. I'll appoint another attorney to represent you. Miss Battishill, I'm going to appoint Grant DeProw . . . to represent you further in these proceedings. It goes without saying since I'm going to do that we'll have to continue this hearing until another date. . .

| | |
|---|---|
| Ms. BATTISHILL: | Okay, sir. Can I go ahead and represent myself then 'cause we'd like to go ahead and get this over with today. |
| COURT: | You want to go ahead and proceed today? |
| Ms. BATTISHILL: | Yes sir. |
| COURT: | Without being represented by a lawyer? |
| Ms. BATTISHILL: | Yes sir. |

During the termination hearing the trial court also inquired about Mr. Battishill's desire to proceed pro se. In response to the trial court's inquiry, Mr. Battishill acknowledged that DHS was attempting to terminate his parental rights and that he wanted to represent himself. Additionally, when DHS called its first witness and Mr. Battishill objected, the trial court admonished him and told him (for the first time) that he would be held to the same standards as licensed counsel.

Based on the foregoing exchange, appellants first argue that Mrs. Battishill was equivocal in her desire to waive her right to counsel. Appellants place much emphasis on the fact that she was warned of the serious nature of the proceedings, was then offered substitute counsel, which she initially accepted, but ultimately declined.

 We are satisfied that because Mrs. Battishill was asked if she wanted to proceed without counsel, coupled with her affirmative response, she was unequivocal in her waiver. Additionally, she was given the opportunity to meet with a different lawyer, but declined when she learned that the judge planned to continue the termination hearing until a meeting with her new counsel could be arranged. Accordingly, we believe that she, like Mr. Battishill, was unequivocal in her desire to waive her right to counsel.[2]

 We now consider the appellants' arguments relating to the second prong of the constitutional standards for waiver of counsel. In order to establish a voluntary and intelligent waiver,

---

[2] Appellants concede that Mr. Battishill's waiver was unequivocal.

the trial judge must explain the desirability of having the assistance of an attorney during the trial and the drawbacks of not having an attorney. *Mayo v. State,* 336 Ark. 275, 984 S.W.2d 801 (1999). Here, the court asked Mrs. Battishill if she understood that DHS had filed a petition seeking to terminate her parental rights and if she understood the seriousness of the matter. To both questions, she responded affirmatively. However, Mrs. Battishill was not advised about the desirability of having the assistance of an attorney during the trial and the drawbacks of not having an attorney. Nor did the trial court warn Mr. Battishill about the advantages of having an attorney during the proceeding or, conversely, about the disadvantages of pro se representation.

■ It is our conclusion that in this case, as in the *Bearden* case, the trial court should have refused to grant appellants' request to proceed pro se. This conclusion is reinforced by the fact that our court in *Bearden v. Arkansas Department of Human Services,* 72 Ark. App. 184, 35 S.W.3d 360 (2000), *rev'd on other grounds,* 344 Ark. 317, 42 S.W.3d 397 (2001), after consideration of DHS's argument that "the statute does not authorize the parent to waive the assistance of counsel once counsel has been appointed," held that a parent does not have an absolute right to proceed without counsel in a proceeding to terminate his parental rights. The court found that the interest of the parent to proceed without counsel must be balanced against the best interest of the child, who faces the potential loss of the relationship with the natural parent.

Reversed.

GRIFFEN, J., agrees.

BAKER, J., concurs.

KAREN R. BAKER, Judge, concurring. I agree that appellants' fundamental rights of due process were denied; however, I write separately to address additional issues as they may occur on remand.

First, although it is not likely that preservation of the argument will be an issue on remand because appellants will have counsel, it should be noted that the youngest child, B.B., was never adjudicated dependent-neglected. Second, the evidence presented does not support the termination of parental rights as to C.B., Jr., and B.B. The allegations upon which termination of rights were predicated merely involved a delay in motor skills and painful dental-hygiene conditions.

Furthermore, although evidence supports the finding that A.B. is a special needs child requiring more than ordinary care, the fact that the parents may not be able to provide for the needs of a child requiring extraordinary care does not necessarily mean that they cannot raise their other two children. To address that issue, a determination of the limitations and interpretation of Section 9-27-341 (ix)(a)(4) of Arkansas Code Annotated (Repl. 2002) may be required. The section sets forth as one ground for the termination of parental rights that a "parent is found by a court of competent jurisdiction . . . to have had his parental rights involuntarily terminated as to a sibling of the child." The subsection is included among offenses significant enough to warrant termination of parental rights for parents having committed murder, voluntary manslaughter, felony battery, and other aggravated acts. Similarly, section 9-27-303(33)(6) relieves DHS from its obligation to provide reasonable efforts towards reunification where parental rights have been involuntarily terminated as to a child's sibling. Both of these references to siblings were added pursuant to Act 401 and approved by the general assembly on March 4, 1999.

During this same session, the definition of dependent-neglected was amended twice following the approval of Act 401. First, Act 1503, approved on April 4, 1999, added the reference to "a sibling" in the definition of a dependent-neglected juvenile. *See* Ark. Code Ann. § 9-27-303 (Repl. 2002). This same definition was then further amended and approved on April 16, 1999, where the reference to a sibling was deleted. Despite this deletion, the term sibling was included in the codification of the amendments.

Section 1-2-207 provides that when identical acts are enacted by the General Assembly during the same session, that the act signed last shall be deemed to have repealed the earlier enactment. However, when more than one act concerning the same subject matter is enacted during the same session, whether or not specially amending the same sections of the Arkansas Code or an uncodified act, all of the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The statutory construction of these sections will be necessary to address the issue dependency neglect regarding the two brothers in this case.

This statutory construction issue is even more critical because this case involves the termination of parental rights. When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Ullom v. Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000). Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Id.* Therefore, our adherence to strict compliance with our statutes is not merely a standard of review. *See Arkansas Dep't of Human Servs. v. Cox*, 349 Ark. 205, 82 S.W. 3d 806 (2002) (DHS's conduct deeply disturbing when agency took custody of child utterly without authority and outside the limited circumstances set out in our state statutes).