Pamela JEFFERSON *v.* ARKANSAS DEPARTMENT
OF HUMAN SERVICES

03-596 158 S.W.3d 129

Supreme Court of Arkansas
Opinion delivered April 8, 2004

648

650

*Anne Orsi Smith, P.A.*, by: *Anne Orsi Smith*, for appellant.

*Gray Allen Turner*, for appellee.

*Stasia Burk*, Attorney Ad Litem.

R AY THORNTON, Justice. On August 9, 2000, the Department of Human Services [DHS] received a report that D.J., the thirteen-year-old biological daughter of appellant, Pamela Jefferson, had been sexually abused by her older brother and her cousin. At the time the report was made, D.J., who lived with her grandmother, was visiting relatives in Michigan, and appellant was living in Georgia.

After Michigan Protective Services interviewed D.J., and after she returned to Arkansas where she was temporarily placed in foster care, DHS filed a petition seeking emergency custody of D.J. The petition was granted, and the trial court set a probable cause hearing. Appellant did not participate in these proceedings. Following the hearing, the trial court concluded that there was probable cause to remove D.J. from appellant's custody.

On October 13, 2000, an adjudication hearing was held to determine whether D.J. was dependent-neglected. Appellant was served with a copy of the petition filed by DHS when she arrived at the adjudication hearing. At that time, she was advised of her right to have legal representation during the proceedings. After briefly discussing the issue with the trial court, appellant chose to proceed with the hearing without an attorney.

On November 1, 2000, an order adjudicating D.J. dependent-neglected was entered. The trial court ordered that D.J. was to remain in the custody of DHS until appellant completed certain requirements. These requirements included entering a residential treatment facility for drug and alcohol abuse, locating housing and employment, and participating in therapy and parenting classes. The trial court in its order also appointed an attorney to represent appellant in future proceedings.

On March 22, 2001, August 9, 2001, February 28, 2002, and August 1, 2002, hearings were held to review the circumstances of the case and to determine proper placement for D.J. After each of the hearings, the trial court determined that returning D.J. to

appellant's custody was contrary to D.J.'s welfare and that it was in her best interest for DHS to have continued custody.

On December 6, 2002, DHS filed a petition seeking to terminate appellant's parental rights to D.J. pursuant to Ark. Code Ann. § 9-27-341 (Repl. 2002). On January 30, 2003, a hearing was held on DHS's petition. Thereafter, the trial court granted DHS's petition and terminated appellant's parental rights.

It is from this order that appellant appeals. She raises four points for our consideration, and we affirm the trial court.

In her first point on appeal, appellant argues that the trial court erred when it conducted an adjudication hearing without appointing an attorney to represent her. Appellant argues that the trial court's actions deprived her of her statutory right to counsel. Appellant also argues that to the extent that a person may waive this statutory right to counsel her waiver was not knowingly or intelligently made.

Arkansas Code Annotated § 9-27-316 (Repl. 2002) provides:

> Upon request by a parent or guardian and a determination by the court of indigence, the court shall appoint counsel for the parent or guardian in all proceedings to remove custody or terminate parental rights of a juvenile.

*Id.* We have explained that:

> Whether due process requires the appointment of counsel in a particular parental-termination proceeding is a matter for the trial court to determine, subject to appellate review. *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 32, (1981). Although it may be wise public policy for the States to adopt higher standards of protection for parents in dependency-neglect and termination proceedings, the threshold requirement for state courts in determining whether to appoint counsel to indigent parents in termination proceedings is fundamental fairness. *Id.*, 452 U.S. at 33-34. Consequently, according to the to the Supreme Court, there is no absolute due process right to counsel in all parental-termination proceedings. *Id.* Rather, it is an issue that must be addressed on a case-by-case basis. *Id.* The State of Arkansas has chosen to allow the appointment of counsel for indigent parents in all parental-termination proceedings. § ACA 9-27-316(h) (Supp. 1999). However, this is a State-

conferred statutory right. The due process right to counsel arises only if the circumstances of each particular case indicate that fundamental fairness requires the appointment of counsel.

*Bearden v. Arkansas Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001).

■■ In *Bearden*, we also held that a parent involved in a termination of parental rights proceeding may waive his right to counsel. However, we noted that the waiver should be voluntarily, knowingly, and intelligently made. We further noted that every reasonable presumption should be indulged against the waiver of such rights. *Id.* Finally, we explained:

> A waiver of the fundamental right to the assistance of counsel is valid only when:
>
> (1) the request to waive the right to counsel is unequivocal and timely asserted;
>
> (2) there has been a knowing and intelligent waiver of the right to counsel; and
>
> (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues.

*Id.*

In *Bearden*, applying the forgoing principles, we determined that the trial court did not err when it refused to allow a parent to waive her right to counsel and proceed *pro se* during parental-termination hearings. Our conclusion was based on a review of a colloquy between the parent and the trial court. We concluded that the parent's waiver was "far from unequivocal." *Id.*

■ In *Battishill v. Arkansas Dep't of Human Servs.*, 78 Ark. App. 68, 82 S.W.3d 178 (2002), our court of appeals was asked to consider a case in which the parents, who were involved in a termination of parental rights case, argued that the trial court erred when it found that they had waived their rights to counsel. The court of appeals discussed the principles articulated in *Bearden*, and adding to our analysis, noted:

> In order to effectively waive counsel the parent must be 'made aware of the dangers and disadvantages of self-representation, so

that the record will establish that he knows what he is doing and that he has made his choice with his eyes open.'

*Id. (quoting Bledsoe v. State*, 337 Ark. 403, 406, 989 S.W.2d 510, 512 (1999)).

After reviewing the facts surrounding the parents' waivers, the court of appeals concluded that the trial court erred when it accepted their waivers. Specifically, the court of appeals concluded that the parents' waivers were not voluntarily or intelligently made because the trial court did not explain to them the desirability of having the assistance of an attorney during the proceedings or the disadvantages of not having an attorney during the proceedings. *Battishill, supra.*

In the case now before us, the following colloquy occurred:

TRIAL COURT: So legally, since you're the person from whom custody was removed, Ms. Jefferson, you have a right to an attorney.

* * *

APPELLANT: I talked to one of the attorneys, and since I wasn't here at the first hearing, they said that, you know, that they didn't know whether or not I wanted legal representation because they thought my family was going to hire an attorney.

* * *

TRIAL COURT: You're supposed to give [appellant] a copy of the petition that tells her all her rights [remarks addressed to DHS's attorney]. That is why I said to serve her with a copy, not when she got to court. I mean, it does little good to give people their rights when they get to the court when we had a hearing awhile back.

* * *

TRIAL COURT: You have got a right to an attorney. Did you know that you had a right to an attorney before now, Ms. Jefferson?

APPELLANT: Well, I didn't know that this state was going to give me an attorney, because we had attempted to hire one,

but then we just—I don't know what happened with that. They did—I mean, before I even got here, but then he didn't even show up, so I don't know what's the deal with that.

TRIAL COURT: Do you have the money to hire one?

APPELLANT: I didn't have a dime to hire one.

\* \* \*

TRIAL COURT: Are you employed?

APPELLANT: No, ma'am.

\* \* \*

TRIAL COURT: Any money at all coming in?

APPELLANT: No, ma'am.

TRIAL COURT: Okay. Do you want the(do you want the court to appoint an attorney for you?

APPELLANT: Yes, ma'am. Here is a piece of paper that they gave me for—just a few minutes ago I was filing it out for an attorney.

\* \* \*

TRIAL COURT: Do you want to proceed without a lawyer, or do you want me to appoint an attorney for you before we have this hearing?

APPELLANT: Will I see him this morning[?]

\* \* \*

TRIAL COURT: The lawyer?

APPELLANT: Yeah.

TRIAL COURT: No, ma'am. I don't even know who that will be yet. We have a list of lawyers that we call. I'm asking you: Do you want me to appoint a lawyer for you? We'll have to

put off this hearing and we'll have to squeeze it in because we cannot have the hearing past fifty days from the time we had the first hearing.

APPELLANT: Okay.

TRIAL COURT: But, I'm saying, it's your call. Everything will stay like it is now, and we'll have a hearing within the time frame. Or do you want to proceed today with the hearing without the lawyer? Those are your two options. You can proceed today and represent yourself and I can appoint a lawyer for you later if the—

APPELLANT: Okay. We're going to proceed.

TRIAL COURT: —court finds dependency-neglect or—

APPELLANT: We're going to proceed.

TRIAL COURT: —you can put it off.

APPELLANT: We'll proceed.

TRIAL COURT: Proceed?

APPELLANT: And you will appoint one for me later?

TRIAL COURT: If we keep the case. If I dismiss the case, you won't need one, but, yes, ma'am.

APPELLANT: Okay.

In light of the relevant case law and the foregoing colloquy, appellant asserts that the trial court erred when it failed to appoint counsel to represent her during the adjudication hearing and that the trial court further erred by accepting her waiver of her right to counsel during the hearing. Before addressing the merits of appellant's arguments, we must consider a jurisdictional issue raised by DHS. Specifically, DHS asserts that we cannot consider errors resulting from the adjudication hearing in this appeal because the order from that hearing was final and appellant failed to appeal from its entry. DHS's assertion is correct.

Rule 2 of the Arkansas Rules of Appellate Procedure—Civil in relevant part provides:

(a) An appeal may be taken from a circuit court to the Arkansas Supreme Court from:

1. A final judgment or decree entered by the circuit court;

* * *

(c) Appeals in juvenile cases shall be made in the same time and manner provided for appeals from circuit court.

* * *

(3) In juvenile cases where an out-of-home placement has been ordered, orders resulting from the hearings set below are final appealable orders:

(A) adjudication and disposition hearings.

*Id.*

On October 13, 2000, a hearing was held to adjudicate a petition filed by DHS alleging that D.J. was dependent-neglected. During the hearing, the trial court also considered whether D.J.'s out-of-home placement was to continue. Appellant was present at the hearing. An adjudication order was entered on November 1, 2000. In that order, the trial court found that D.J. was dependent-neglected and that she should remain out of appellant's home and in the custody of DHS. Additionally, in that order, the trial court appointed an attorney to represent appellant.

■ Pursuant to Ark. R. App. P.—Civ. 2, the adjudication order was a final, appealable order. Appellant failed to file a timely notice of appeal from that order. Such a failure deprives this court of jurisdiction to consider the issues raised in that order. *See Hawkins v. Sate Farm Fire and Insurance Casualty, Co.*, 302 Ark. 582, 792 S.W.2d 307 (1990); *Moore v. Arkansas Dep't of Human Servs.*, 69 Ark. App. 1, 9 S.W.3d 531 (2000). Accordingly, we cannot consider appellant's arguments relating to errors made during the adjudication hearing.

■ ■ Although we have concluded that a challenge to the order adjudicating D.J. dependent-neglected is not timely, we will consider whether the failure to provide counsel to appellant during the adjudication proceeding permeated or tainted the

remainder of appellant's case so as to deprive appellant of fundamental fairness in subsequent proceedings. After reviewing the record, we conclude that the fundamental fairness of the proceedings leading up to the termination of appellant's parental rights was not jeopardized based on the trial court's failure to provide legal representation to appellant at the adjudication hearing. We note that the order entered after the hearing appointed an attorney to represent appellant during the remaining proceedings. Indeed, appellant had several attorneys during this case and was represented by an attorney at the hearing on DHS's petition to terminate her parental rights. Finally, although the issue raised by appellant is procedurally barred, we note that it implicates important safeguards imposed with respect to termination of parental-rights proceeding. For that reason, and out of an abundance of caution, we have decided to give no consideration to the testimony given by appellant at the adjudication hearing because such testimony was given without legal representation or a proper waiver thereof.

 In her second point on appeal, appellant asserts that the trial court erroneously withheld custody of D.J. from her until she paid outstanding district court fines. Appellant contends that the trial court's actions were "tantamount to placing [her] in 'debtor's prison.' " In support of her contention, appellant cites several occasions in the record where the issue of her unpaid fines were discussed. The issue of appellant's unpaid fines was discussed at various review hearing because DHS was attempting to offer financial assistance to appellant. The parties entered into an agreement in which DHS paid appellant's rent in order to free up appellant's finances to pay her fines. The issue was also discussed during the review hearings because nonpayment of the fines resulted in warrants for appellant's arrest, and the trial court was concerned that appellant would be arrested while D.J. was in her custody. Although the issue was discussed, a review of the record and the order terminating appellant's parental rights reveals that the trial court did not withhold custody of D.J. from appellant or terminate appellant's parental rights to D.J. based on her failure to pay district court fines. Accordingly, appellant's contention that custody of D.J. was withheld from her because she had outstanding district court fines is without merit.

In her third point on appeal, appellant argues that the trial court improperly considered D.J.'s wish to be adopted as the "controlling factor" in its determination that appellant's parental rights should be terminated. Appellant's contention is misplaced. Throughout the proceedings, the trial court took into consideration D.J.'s wishes concerning the proper goal for her case. At the time of the termination hearing, D.J. had been in foster care for approximately two-and-one-half-years. She testified at the hearing that she wanted to be eligible for adoption by her foster parents so that she could be in a stable environment. A review of the order entered following the hearing indicates that the trial court considered D.J.'s wishes when it terminated appellant's parental rights. We have previously held that a trial court can consider a child's wishes when it is making custody determinations. *See Moore v. Smith*, 255 Ark. 249, 499 S.W.2d 634 (1973). However, further review of the order also shows that D.J.'s wishes were not the "controlling factor" in the trial court's decision. Specifically, the order provides:

> From the testimony, exhibits, statements of the parties and counsel, the record herein, and other things and matters presented, the court noting the best interests, welfare, case plan, health and safety and appropriate placement alternatives does hereby find, order and adjudge:

> \* \* \*

> The mother has appropriate services offered to her, yet she has not complied with all the court orders and services offered. This court has repeatedly found that the mother was not in a position of emotional and mental stability to have [D.J.] returned to her custody.

> \* \* \*

> [D.J.] has been in DHS custody for two years and five months and needs a safe and permanent home with parents who can provide for all of her needs.

> \* \* \*

> The court, however, will note that the relatives were not always willing to step forth and provide a placement for [D.J.]

* * *

> The court must view what is best in these matters from the child's point of view. [D.J.] deserves a safe, permanent home where she can be assured of continuity and stability. It is not fair for [D.J.] to require that she continue to have court hearings and have her case goal remain independence when there is another goal–that of adoption–which meets her needs. The foster parents want to adopt [D.J.]

After reviewing the facts surrounding the case and the foregoing order, we conclude that the trial court gave proper weight to D.J.'s wishes when it was considering DHS's petition to terminate appellant's parental rights. We further conclude that D.J.'s wishes were not the "controlling factor" in the trial court's decision to terminate appellant's parental rights. Accordingly, we cannot say that the trial court erred.

In her last point on appeal, appellant contends that the order terminating her parental rights was not based on clear and convincing evidence. We have held that when the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Ullom v. Arkansas Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000). Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *Ullom, supra.*

The facts warranting termination of parental rights must be proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341. When the burden of proving a disputed fact in chancery court is by clear and convincing evidence, the question that must be answered on appeal is whether the chancery court's finding that the disputed fact was proven by clear and convincing evidence was clearly erroneous. *Larscheid v. Arkansas Dep't of Human Servs.*, 343 Ark. 580, 36 S.W.3d 308 (2001). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Baker v. Arkansas Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000). A finding is clearly erroneous when, although

there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dinkins, supra.* In resolving the clearly erroneous question, we give due regard to the opportunity of the chancery court to judge the credibility of witnesses. *Baker, supra.*

DHS sought termination of appellant's parental rights pursuant to Ark. Code Ann. § 9-27-341. Specifically, DHS alleged that:

> (2) That the juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parents.

> (3) That, subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrate that return of the juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and that, despite the offer of appropriate family services, the parents have manifested the incapacity or indifference to remedy the subsequent issues or factors, or rehabilitate the parents' circumstances, which prevent return of the juvenile to the family home.

> (4) At the permanency-planning hearing on August 1, 2002, this court found that mom has not gotten herself in an appropriate position mentally and emotionally to be able to properly provide for [D.J.'s] needs. The court also found that [D.J.] made a reasonable request not to return to her mom's house.

To determine whether the trial court's order terminating appellant's parental rights was supported by clear and convincing evidence, we must review the facts of the case. In August of 2000, DHS took D.J. into custody based on allegation of sexual abuse. When DHS filed the petition seeking to gain emergency custody of D.J., appellant had legal custody of D.J. and appellant's mother had physical custody of D.J.

After D.J. was placed in DHS's custody, a hearing was held to determine whether she was dependent-neglected. At the close of the hearing, the trial court found that D.J. was dependent-neglected and instructed appellant to: (1) enter a drug treatment program; (2) find housing and employment; (3) attend counseling;

(4) participate in random drug testing; (5) refrain from using drugs or alcohol; and (6) participate in parenting classes. The goal of the case at the conclusion of the adjudication hearing was reunification of appellant and D.J.

On August 9, 2001, a permanency planning and review hearing was held. At the hearing Deirdra Notto, a DHS employee testified that appellant had some "legal problems," including outstanding district court fines and several warrants for her arrest. DHS agreed to provide monthly financial assistance to appellant to enable her to use the money that she received from her job to resolve her legal problems. Subsequent to this hearing, appellant was arrested.

On February 28, 2002, another review hearing was held. Appellant did not attend this hearing. During the hearing, Ms. Notto informed the trial court that DHS had provided appellant with four months of financial assistance, but that appellant had failed to pay the outstanding court fines and that she was facing an additional arrest warrant. Ms. Notto also informed the trial court that D.J. had reluctantly been visiting appellant and that she wanted to change the goal of the case to relative placement.

Missy Chism, an employee with SCAN, also testified at the hearing. She explained that appellant was not regularly attending her counseling appointments. Ms. Chism further testified that appellant had either quit her job or was fired from her job.

After hearing the testimony, the trial court made the following findings:

> Mom's behaviors don't indicate that she's willing to work towards accepting services from the department and doing the things that she should do on her own to have [D.J.] returned to her custody. She's not present today. She's not made herself available for services from SCAN and DHS as required.

> She has not made efforts to pay the outstanding court fines in Maumelle and Little Rock District Courts. She's not attending therapy on a regular basis.

Thereafter, on March 25, 2002, the trial court entered an order changing the goal of the case from reunification to relative placement with a concurrent goal of independence. This order was entered approximately seventeen months after the order adjudicating D.J. dependent-neglected was entered. Appellant was represented by counsel at all hearings held after October 2000.

At the permanency-planning hearing held August 1, 2002, Ms. Notto advised the trial court that she had not had contact with appellant for approximately six months. She further testified that appellant had not taken advantage of the services offered by DHS during the preceding six months. Ms. Notto described appellant's actions as "noncompliant" or "uncooperative."

Appellant also testified at the hearing. She stated that her visits with D.J. were sometimes troubled. She also testified that she was unable to work. Finally, Janice Simmons, appellant's mother, testified. She stated that she did not think that appellant's home was the proper home for D.J. At the close of the hearing, the trial court found:

> [I]t's in [D.J.'s] best interest for the permanency plan to be independence. Mom has not, at this point in her life, gotten herself into an appropriate position mentally and emotionally to be able to properly provide for [D.J.'s] needs.

On January 30, 2003, a hearing was held to consider DHS's petition to terminate appellant's parental rights. At the hearing, Ann Brown, D.J.'s therapist testified. She stated that she and D.J. had discussed the issue of appellant's parental rights being terminated. Ms. Brown testified that D.J. told her that she wanted the termination to go forward. Additionally, D.J. told Ms. Brown that she had "a need for more stability in her life and planning for her future, and [that] she [felt] that [the termination] would be a positive step towards those things." Ms. Brown further testified that D.J.'s relationship with her mother was a "source of stress and frustration."

At the hearing, Ms. Notto reviewed the history of the case, outlined the services provided to the family, and discussed the failed attempts to identify a relative suitable for D.J.'s placement.

Appellant also testified. She stated that she was not employed and that she was receiving assistance from her family.

On February 20, 2003, the trial court entered an order terminating appellant's parental rights. In its order, the trial court found:

> [T]hat the petition to terminate parental rights should be granted. ... [.] [T]hat [D.J.] has been in the custody of DHS since August 21, 2000, when she was removed from her mother's legal custody and

her grandparent's physical custody due to allegations of sexual abuse by her brother. She was found to be dependent neglected on October 13, 2000 and has continued out of her mother's custody since she was removed on August 21, 2000.

\* \* \*

The mother has appropriate services offered to her, yet she has not complied with all the court orders and services offered. This court has repeatedly found that the mother was not in a position of emotional and mental stability to have [D.J.] returned to her custody.

After reviewing the foregoing facts, we conclude that the trial court's order is supported by clear and convincing evidence. The evidence established appellant did not have custody of D.J., who was adjudicated dependent-neglected, for more than twelve months. During that time, DHS provided numerous services to appellant and to D.J. in an effort to correct the conditions that led to D.J.'s removal from the home. Specifically, DHS provided housing assistance, parenting classes, transportation assistance, therapy, substance abuse counseling, financial assistance, drug and alcohol testing, and other supportive services. Notwithstanding the efforts made by DHS and the trial court, appellant repeatedly failed to take appropriate actions to provide a stable home environment for D.J. Specifically appellant: (1) was evicted from her home; (2) was frequently unemployed; (3) was forced to rely on relatives for assistance; (4) was inconsistent in attending her therapy sessions; (5) was arrested and had outstanding court fines and arrest warrants; and (6) failed to follow the trial court's orders. We conclude that appellant manifested an incapacity or indifference to correct the conditions that led to D.J.'s removal from her home. Upon considering the evidence in this case, the trial court concluded that there was clear and convincing evidence to support an order terminating appellant's parental rights. We cannot say that its decision was clearly erroneous. Accordingly, we affirm the trial court.

Affirmed.