Katheryn NEVES da ROCHA and Mateus Neves da Rocha *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 04-915                                                      219 S.W.3d 660

Court of Appeals of Arkansas
Opinion delivered December 7, 2005

---

*Jeff Rosenzweig*, for appellants.

*Gray Allen Turner*, for appellee, Arkansas Department of Human Services.

*Stasia D. Burk*, Attorney ad Litem, for appellee V.N.

DAVID M. GLOVER, Judge. In an order entered November 16, 2004, the parental rights of Katheryn and Mateus Neves da Rocha, appellants herein, were terminated as to their daughter, V.N. Appellants now appeal that order, arguing that the trial court misapplied the doctrines of res judicata and collateral estoppel in this case, thereby improperly dispensing with DHS's burden of proof and depriving appellants of a proper opportunity to be heard. Under this broad point of appeal, appellants have delineated eight subpoint headings:

A. Definitions of res judicata and a particular type thereof: collateral estoppel.

B. The Neves da Rochas did not receive the full and fair hearing in the earlier proceedings required for application of the doctrines.

C. The preclusion doctrines are inapplicable because of differences in the standard of proof.

D. The preclusion doctrine is particularly inapplicable to the termination hearing because the case was on appeal at the time.

E. The circuit court abused its discretion by permitting the use of offensive collateral estoppel.

F. The apparent application of Ark. Code Ann. § 9-27-341 as a basis to apply preclusion doctrines is also flawed.

G. In addition to the structural problems caused by the circuit court's rulings, the Neves da Rochas can demonstrate actual prejudice from the denial of their right to call an expert witness.

H. The denial of continuances also prejudiced the Neves da Rochas.

■■ In *Bearden v. Department of Human Services*, 344 Ark. 317, 328, 42 S.W.3d 397, 403-04 (2001) (citations omitted), our supreme court, citing *Ullom v. Department of Human Services*, 340

Ark. 615, 12 S.W.3d 208 (2000), set forth the well-settled standard of review in cases where parental rights have been terminated:

> We have held that when the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. The facts warranting termination of parental rights must be proven by clear and convincing evidence. In reviewing the trial court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. Clear and convincing evidence is that degree of proof which will produce in the factfinder a firm conviction regarding the allegation sought to be established. In resolving the clearly erroneous question, we must give due regard to the opportunity of the chancery court to judge the credibility of witnesses. Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations.

In the present case, a petition for emergency custody was filed by DHS on January 25, 2004. In the affidavit in support of that petition, Raeshunna Robinson, a DHS employee, stated that V.N., who was born on December 2, 2003, was taken to the emergency room at Arkansas Children's Hospital for a second time on January 15, 2004, where it was determined that she had multiple bone fractures all over her body that were of varying ages. She had previously been taken to the emergency room on January 10, 2004, at which time she was diagnosed with a broken clavicle and humerus. Robinson stated in her affidavit that V.N. was taken into DHS custody on January 22, 2004, because she had too many unexplained broken bones in her body and that the agency was concerned for her safety and welfare. An order of emergency custody was filed of record on January 26, 2004, placing custody of V.N. with DHS; appointing Stasia Burk as attorney ad litem for her; and setting the probable-cause hearing for January 30, 2004.

The probable-cause hearing was held on January 30, 2004, at which time the trial judge found that it was contrary to V.N.'s health and welfare to be returned to her parents due to the multiple number of fractures she had sustained without any explanation. At that hearing, both parents testified that they did not know what

caused all the fractures, and they denied harming their child. Katheryn Neves da Rocha testified that V.N.'s bone densitometry test and parathyroid and vitamin D levels were all normal; however, the results of a collagen test to determine whether she had osteogenesis imperfecta (brittle-bone disease) were not back at the time of this hearing. The trial judge scheduled the adjudication hearing for March 18 and 24, 2004, setting the date out as far as possible in order to hopefully have the results of the collagen test at that time, but stating that the matter absolutely had to be heard within sixty days, and that under no circumstances could the trial court continue the hearing any later than sixty days. *See* Ark. Code Ann. § 9-27-327(a)(1)(B) (Supp. 2005) (adjudication hearing to be held within thirty days after the probable-cause hearing; adjudication hearing can be continued for thirty days upon motion of court and parties for good cause shown, but the adjudication hearing shall not be completed more than sixty days after the probable-cause hearing).

The adjudication hearing was held on March 24, 2004. At the beginning of the hearing, appellants' attorney objected to holding the hearing that day, arguing that the statute mandating that the adjudication hearing be held within sixty days of the probable-cause hearing was unconstitutional and violated his clients' rights to procedural and substantive due process because the one definitive test regarding brittle-bone disease had not yet been completed.

In response, DHS cited *Hathcock v. Arkansas Department of Human Services*, 347 Ark. 819, 69 S.W.3d 6 (2002), in which our supreme court held that the purpose of the time limit on continuances for adjudication hearings was clear,[1] and that the limited continuance provision of the juvenile code controlled rather than Rule 40(b) of the Arkansas Rules of Civil Procedure because it served the specific purpose of expediting hearings involving children in out-of-home placements. Based upon this case, the trial court denied appellants' request to continue the hearing until the results of the brittle-bone test could be learned.

At the adjudication hearing, Katheryn Neves da Rocha testified again that she did not know what caused V.N.'s injuries.

---

[1] The statutory provision in place at the time *Hathcock* was decided was fifty days, which has now been increased to sixty days. *See* Ark. Code Ann. § 9-27-315(d)(2) (Supp. 2005).

She stated that except for her husband dropping V.N. one time, they did not know who could have done this to their child. Mateus Neves da Rocha testified that one of the fractures could be explained by the incident when he accidentally dropped his daughter, but he did not have an explanation for any of the other fractures. Both parents expressed that they thought V.N. would be safe with them.

In its amended adjudication order, the trial court found that V.N. was dependent/neglected; that the injuries suffered by V.N. were not accidental; and that one or both of the parents were the likely ones who caused the injuries. The trial court noted that this was a sad case, but it had to rule on the testimony that had been presented. The trial court pointed out that both parents denied harming the child, but X-rays indicated fractures of varying ages, ranging from two to four weeks old. The trial court found that there were several types of fractures, some consistent with fractures that a child-abuse victim might have, including bucket-handle fractures and oblique fractures, and that the radiologist's findings were suspicious of trauma. The trial court also found that the evidence and observation of medical personnel did not reveal symptoms of brittle-bone disease, while noting that the results of the one test that would determine brittle-bone had not been returned. The trial court further found that V.N. was not safe in her parents' home. *The findings in this adjudication order were not appealed.*

At the disposition hearing on April 7, 2004, the trial court found that adoption should be the goal because it was in V.N.'s best interests due to her injuries and the fact that one or both of her parents likely caused the injuries. On May 13, 2004, the trial court entered a no-reunification-efforts order, finding that it was in V.N.'s best interests that no reunification services be provided. The trial court found that V.N. had been subjected to extreme and repeated cruelty; that the injuries were not accidental; and that one or both parents likely caused the injuries. The trial court also noted that the last bone test, the one for osteogenesis imperfecta, had come back with no abnormal findings.

At the no-reunification hearing, DHS's attorney moved to incorporate the record of the case into the hearing, and there were no objections. Also at that hearing, the trial court denied appellants' motion to allow Dr. Charles Hyman to testify regarding alternative theories of the source of V.N.'s injuries other than from her parents, finding that all of the issues that Dr. Hyman would

testify about had already been litigated, and that it was res judicata and not relevant to that stage of the proceeding. Appellants filed a notice of appeal after entry of the no-reunification order.[2]

The trial court entered an order on November 16, 2004, from the October 29, 2004 termination hearing finding that it was in V.N.'s best interests to terminate appellants' parental rights. In that order, the trial court noted that it incorporated into the record all of the pleadings and testimony in the case incurred before the termination of parental rights hearing; that it denied appellants' request to allow Dr. Hyman to testify; and that it granted the termination of appellants' parental rights. Appellants also filed a notice of appeal from this order.

Each of the first six subpoints of appellants' argument pertain to the trial court's refusal to allow appellants to present testimony from Dr. Charles Hyman at the no-reunification hearing that refuted a finding of child abuse on the part of appellants. The trial court refused to allow Dr. Hyman to testify, stating, "All the issues that Mr. Smith believes Dr. Hyman can testify about have already been litigated. It is res judicata. It is not relevant to this stage of the proceeding."

■■ The process through which a parent or parents travel when a child is removed from their home consists of a series of hearings — probable cause, adjudication, review, no reunification, disposition, and termination. All of these hearings build on one another, and the findings of previous hearings are elements of subsequent hearings. "[T]he proceedings and orders pertaining to the termination of parental rights [are] in fact a continuation of the original dependency-neglect case." *Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 361, 990 S.W.2d 509, 514 (1999). Furthermore, a second dependency-neglect adjudication is not required at the final hearing — DHS must only prove that the child has been previously adjudicated dependent/neglected. *Bearden v. Arkansas Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001).

In this case, appellants had the opportunity at the adjudication hearing to present competing evidence to DHS's assertion that they had abused their child — yet they presented none. This

---

[2] This court granted appellants' motion to hold briefing in abeyance until the record from the termination hearing could be lodged.

was the place for Dr. Hyman's testimony — prior to the adjudication of V.N. as dependent/neglected and the trial court's findings that the injuries were not accidental, that appellants were the ones who likely caused the injuries, and that V.N. was in fact a victim of child abuse.

■ It is not necessary to address appellants' arguments concerning res judicata because they did not appeal the adjudication order, which is an appealable order. Ark. R. App. P. – Civ. 2(c)(3)(A). Because appellants failed to appeal this order, in accordance with our supreme court's decision in *Jefferson v. Arkansas Department of Human Services*, 356 Ark. 647, 158 S.W.3d 129 (2004), this court cannot now consider arguments relating to errors made during the adjudication hearing. Appellants are trying to relitigate the merits of the adjudication hearing with the introduction of Dr. Hyman's testimony at both the no-reunification hearing and the termination hearing, and *Jefferson* makes it clear that that is improper. *See also Lewis v. Arkansas Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005).

■ In their next subpoint, appellants argue that they can demonstrate actual prejudice from the denial of their right to call Dr. Hyman as an expert witness. However, as discussed above, Dr. Hyman's intended testimony was offered to refute the earlier adjudication-hearing finding that V.N. had been abused, and that is not allowed under our supreme court's holding in *Jefferson, supra*.

■ Appellants' last subpoint, that the denial of continuances prejudiced them, is broken down into the denial of the original continuance in the dependency-neglect hearing and the denial of the continuance at the termination hearing. With regard to the denial of the continuance in the dependency-neglect hearing, it is clear that we are bound by the reasoning set forth above from *Hathcock v. Arkansas Department of Human Services, supra*, which is applicable in this case and which supports the denial of appellants' motion for continuance at the dependency-neglect hearing.

■ We also find no error with regard to the denial of the continuance at the termination hearing to afford Dr. Hyman an opportunity to examine V.N. As the trial court stated at the hearing, it could see no other purpose for Dr. Hyman's testimony than to refute the original cause of the injuries and the finding of

dependency neglect from the adjudication hearing, which, as discussed above, is not permitted by our supreme court's holding in *Jefferson, supra.*

Affirmed.

NEAL and VAUGHT, JJ., agree.