Patsy MOORE *v.* ARKANSAS
DEPARTMENT of HUMAN SERVICES

CA 99-441                                          9 S.W.3d 531

Court of Appeals of Arkansas
Division I
Opinion delivered January 5, 2000

*Anne Orsi Smith*, for appellant.

*Kay West Forrest*, for appellee.

*Susan D. Burk*, for appellees K. Garden and A. Shelton, by their attorney *ad litem*.

JOSEPHINE LINKER HART, Judge. Appellant Patsy Moore, the mother of K.G. and A.S., appeals the termination of her parental rights. For reversal, she raises three points. She argues that the court erred by finding that the Arkansas Department of Human Services (DHS) made reasonable efforts to prevent the initial removal of her children on October 10, 1995. She also maintains that the court erred by finding at the disposition hearing held on September 25, 1997, that DHS had made reasonable efforts to reunite the family. Finally, she asserts that the court erred by finding at the hearing held on November 20, 1998, that appellee presented clear and convincing evidence to support the termination of her parental rights. We affirm.

On September 17, 1995, K.G, the two-year-old daughter of appellant, was admitted to Children's Hospital with burns covering ten percent of her body and bruises and welts on her back. After DHS was notified of K.G.'s injuries, appellant, then aged sixteen, told police that her daughter's injuries were caused by Andrew Shelton, her adult, live-in boyfriend and the father of A.S., her infant daughter. She said Shelton had placed K.G. in a bath of hot water, threw her down a half-flight of stairs, and whipped her with

a purse strap. Shelton was arrested and incarcerated on charges of first-degree battery.

Appellant refused foster-care placement and continued living with A.S. in the apartment that she had shared with Shelton while K.G. remained in the hospital. DHS opened a protective-services case for the family and provided appellant with in-home, intensive family services. After appellant failed to regularly visit K.G. in the hospital and took no steps to protect her daughters should Shelton be released from jail, DHS petitioned for and obtained emergency custody of both children on October 10, 1995.

Custody of both children was continued with DHS at a proba-ble-cause hearing held on October 16, 1995. At the adjudication hearing held on December 4, 1995, the court again continued the out-of-home placement and adjudicated both children to be depen-dent-neglected as defined by Ark. Code Ann. § 9-27-303(14) (Repl. 1998). The court found that: (1) K.G. had suffered serious physical abuse, (2) appellant had failed to protect the children, and (3) inappropriate conditions existed in appellant's home. Thereafter, the court held regular review hearings and, on March 27, 1997, held the permanency-planning hearing mandated by Ark. Code Ann. § 9-27-338 (Repl. 1998). Disposition hearings were held on September 25, 1997, and February 19, 1998, for which orders were entered respectively on October 28, 1997, and March 19, 1998.

Two and one-half years after receiving custody of the children, DHS petitioned for termination of parental rights. A hearing on this petition was held on November 20, 1998, and the court entered an order terminating appellant's parental rights on January 11, 1999. Appellant filed her first notice of appeal on January 20, 1999.

Arkansas Rules of Appellate Procedure—Civil 2(c)(3) provides that orders resulting from adjudication and disposition hearings are final appealable orders where an out-of-home placement has been ordered. Although the adjudication hearing was held on December 4, 1995, the court reserved ruling on the issue of whether DHS had made reasonable efforts to prevent the initial removal of the children until May 30, 1996, when the court entered a ruling favorable to DHS. Appellant appealed neither the adjudication order nor the order filed on May 30, 1996. On September 25, 1997, a disposition hearing was held in which the court continued the out-of-home placement, finding that DHS had made reasonable efforts to provide

reunification services. Again, appellant did not appeal from the order entered on October 28, 1997.

■ Although appellant now asserts that the court erred by finding that DHS made reasonable efforts to prevent the initial removal of the children in 1995, she failed to timely appeal from that order. Further, while appellant asserts the court erred by finding at the disposition hearing held on September 25, 1997, that DHS made reasonable efforts to provide reunification services to the family, she also failed to appeal from that order. Appellant's failure to appeal from these final and appealable orders deprives this court of jurisdiction to address her first two issues of appeal, and, therefore, we do not address appellant's first two arguments. *Rossi v. Rossi*, 319 Ark. 373, 892 S.W.2d 246 (1995); *Breckenridge v. Ashley*, 55 Ark. App. 242, 934 S.W.2d 536 (1996).

Appellant also asserts that the court erred by finding that clear and convincing evidence supported the termination of her parental rights. Appellant argues that she was making great strides in learning to parent her children and was "right on the cusp" of having her children returned, that professionals working with her did not endorse the termination of her parental rights, and nothing prevented reunification but a lack of action on the part of persons other than herself. We disagree and affirm.

Arkansas Code Annotated section 9-27-341(b)(2)(A) (Repl. 1998) provides:

> [A]n order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
>
> (2) Of one (1) or more of the following grounds:
>
> (A) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months, and, despite a meaningful effort by the Department of Human Services to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent....

■ "Clear and convincing evidence is that degree of proof which will produce in the fact finder a firm conviction as to the allegation sought to be established." *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). When the burden of proving a disputed fact in chancery is by clear and convincing evidence, the appellate inquiry is whether the chancery court's finding that the

disputed fact was proven by clear and convincing evidence is clearly erroneous. *J.T. v. Arkansas Department of Human Services,* 329 Ark. 243, 947 S.W.2d 761 (1997).In resolving the clearly erroneous question, due regard must be given to the trial court's opportunity to judge the credibility of the witnesses. *Id.*

The court's prior orders required appellant to maintain a stable home, attend counseling, and attend visitation with the children. On November 20, 1998, the date the petition for termination of parental rights was heard, appellant did not have her own home and had not maintained a stable residence. She admitted moving into her grandmother's home the preceding September, after moving between the homes of several relatives over the past year. Because appellant failed to notify DHS of her change of residence so that transportation could be provided for her and the children, she missed some scheduled counseling appointments and visitation with the children. Further, the record is replete with services and referrals provided by DHS in an effort to rehabilitate the family. Rehabilitative services provided to the family were foster care, day habilitation, casework services, transportation, counseling, parenting classes and training, visitation, referrals for housing assistance, home evaluations, a psychological evaluation, and educational and vocational services. The court could conclude from the evidence presented that it was appellant's failure to notify DHS of her changes of address that caused the interruptions in rehabilitative services offered to her. Further, appellant's inability to parent her children for yet another six months to a year and her failure to provide a stable home for the children does not indicate that she was "right on the cusp" of being able to parent her children.

Although appellant's therapist, Jean Crume, did not recommend termination of her parental rights, Crume admitted her inability to make an objective recommendation in this case and disclosed that any recommendation that she made would be in appellant's interest. She then testified that appellant was moving slowly in a positive direction. However, she predicted that it would be another six months to a year before appellant would be able to parent her children. Crume confirmed that she had requested, on at least two occasions, more time to work with the family. Appellant's assertion that the caseworker, Elizabeth Shack, did not endorse termination of her parental rights is in error. At the hearing for termination of parental rights, Shack recommended that appellant's parental rights be terminated because of her lack of stability.

■ In determining whether parental rights are terminated, the rights of the parent "will not be enforced to the detriment or destruction of the health and well-being of the child." *Corley v. Arkansas Department of Human Services*, 46 Ark. App. 265, 878 S.W.2d 430 (1994), citing *Burdette v. Dietz*, 18 Ark. App. 107, 711 S.W.2d 178 (1986). At the time appellant's parental rights were terminated, the children were ages five and three and had been in foster care for the majority of their young lives.

■ Arkansas Code Annotated section 9-27-341(a)(3) (Supp. 1999) provides:

> The intent of this section is to provide permanency in a juvenile's life in all instances where the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time, as viewed from the juvenile's perspective.

While the rights of the natural parents are not to be passed over lightly, they must give way to the best interests of the children when clear and convincing evidence shows the natural parents are incapable of providing for the reasonable care for their children. *Corley, supra.* In the case at bar, appellant had eighteen months between the permanency planning hearing and the termination hearing to rehabilitate and correct the conditions that caused removal. As she failed to provide a home and to demonstrate the ability to adequately parent these children after receiving reasonable, rehabilitative services for over three years, we cannot say that the chancellor clearly erred in finding that DHS presented clear and convincing evidence to support the termination of appellant's parental rights.

Affirmed.

ROAF, J. and HAYS, S.J., agree.