

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-13-136

|  |  |
|---|---|
| TAMARA MCBRIDE | **Opinion Delivered** October 9, 2013 |
| APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. JV-11-411-6] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD | HONORABLE EARNEST E. BROWN, JR., JUDGE |
| APPELLEES | AFFIRMED |

## BILL H. WALMSLEY, Judge

Appellant Tamara McBride appeals from the Jefferson County Circuit Court's termination of her parental rights to her son, J.M. (DOB: 06-09-11).[1] McBride argues that there was insufficient evidence to support termination. We affirm.

On June 14, 2011, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect based on the fact that McBride tested positive for THC at the time she gave birth to J.M. The child was adjudicated dependent-neglected on August 12, 2011, and the trial court ordered DHS to provide services to the mother. At the adjudication hearing, McBride again tested positive for THC and was held in contempt for "her attitude and outburst in court." In a review order dated November 18, 2011, the trial

---

[1]McBride's case was previously before this court. In *McBride v. Arkansas Department of Human Services*, 2013 Ark. App. 389, we remanded to settle and supplement the record and ordered McBride to supplement her addendum.

SLIP OPINION

court noted that McBride had made no progress toward alleviating or mitigating the circumstances that caused J.M.'s removal from her home. Another review hearing was scheduled for April 12, 2012, but McBride abruptly left the courthouse, and the hearing had to be rescheduled. A permanency-planning hearing was held on August 23, 2012, at which the trial court found that McBride had failed to comply with the case plan and made minimal progress. The trial court further found that additional services would have little likelihood of remedying the cause of removal. The goal of the case was changed to adoption. On September 24, 2012, DHS filed a petition for termination of parental rights, and a hearing was held on October 31, 2012. McBride was approximately one hour late to the termination hearing because she had no transportation and had not requested that DHS provide transportation.

LaTisha Young, a DHS supervisor, testified that McBride last tested positive for marijuana on a random drug screen in June 2012. Although McBride had ample opportunity to complete drug treatment, with three referrals made, she did not seek outpatient drug treatment until September 27, 2012. Young made reference to McBride's two other children who had been removed from her custody in 2010. McBride completed parenting classes, but Young did not think McBride had learned anything from the classes. At a visitation when J.M. was not even one year old, Young observed McBride trying to feed the baby Cheetos and recalled that McBride thought it was "odd" that J.M. looked at her so much. Since J.M. entered foster care, McBride had visited him a total of nine times. Young testified that J.M. had bonded with his foster family and that he was adoptable.

Kenneth Evans, a detective with the Pine Bluff Police Department, testified that a search warrant was executed at McBride's house on August 15, 2012, and that marijuana was found, along with a set of digital scales and plastic baggies. Evans stated that McBride and a male companion were arrested for possession of a controlled substance with intent to deliver and possession of drug paraphernalia. Children were present in the home at the time of McBride's arrest.

Lena Hampton, a therapist at Southeast Arkansas Behavioral Health Care, testified that she had been McBride's therapist for anger management since McBride was a teenager. Hampton stated that McBride had difficulty following through on treatment goals. According to Hampton, over the past fifteen months, she had counseled McBride on only three or four occasions. McBride often missed appointments, and her stated reason was lack of transportation.

Kathleen Armstrong, an adoption specialist for DHS, testified that J.M. was adoptable considering that he was very young and had no health or medical concerns. She stated that a potential adoptive family had been located.

According to McBride, she quit drugs on her own in June 2012. When asked how long she thought it might take to get past her drug addiction, McBride said, "I have been over it." McBride receives disability benefits for Attention Deficit Hyperactivity Disorder. McBride claimed that she did not know that her male friend, who was staying with her, was selling drugs from her home. She testified that she was unemployed and missed visitations with J.M. and appointments for counseling because she had no transportation. McBride later conceded

that transportation was not the reason she failed to attend counseling, as the counselor's office was within walking distance. DHS had offered to provide transportation for McBride, but she did not give the required advance notice. McBride testified that she has a ninth-grade education and began taking GED classes in August 2012 when she was released from jail.

The trial court entered an order terminating McBride's parental rights on November 19, 2012, based on three separate grounds. The trial court found that J.M. had been adjudicated dependent-neglected and continued to be out of McBride's custody for more than twelve months and that, despite a meaningful effort by DHS to rehabilitate her and correct the conditions that caused removal, those conditions had not been remedied by McBride. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2011). The trial court further found that, during the more than twelve months J.M. was out of McBride's custody, McBride willfully failed to provide significant material support or maintain meaningful contact with J.M. Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(*a*). Finally, the trial court found that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that return of J.M. to McBride was contrary to his health, safety, or welfare and that McBride had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate her circumstances that prevented the return of J.M. to her custody. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

Termination-of-parental-rights cases are reviewed de novo. *Jackson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 411, ___ S.W.3d ___. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that

4

will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parents. In addition, the proof must establish at least one of several statutory grounds. Ark. Code Ann. § 9–27–341(b)(3)(B). When an appellant fails to attack the trial court's independent, alternative basis for its ruling, we will not reverse. *Martin v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 423, 384 S.W.3d 580.

McBride's argument on appeal essentially consists of seven sentences:

In this case the trial court did not give adequate weight to the progress made by Appellant. In this case, Appellant's disability and ninth grade education should have been given due consideration by the trial court. In addition to those impediments, Appellant also was faced with a revolving door of caseworkers. In the present case, the DHS supervisor had to testify because the caseworker was unavailable. This should give this Court pause as to the quality of services provided to Appellant. . . . The trial court's statement that he would have given more time had there been progress is not supported by the testimony of the Appellant. Despite her many obstacles, Appellant

had made genuine progress in reunifying with her child.

McBride does not specifically challenge each of the three grounds upon which the trial court terminated her rights. McBride argues that the trial court erred in finding that she failed to remedy the conditions that caused removal in that she had made "genuine progress." The trial court was in the best position to weigh the evidence and determine credibility. *Jackson*, *supra*. Testimony supports the trial court's determination that McBride made minimal progress. Despite three referrals, McBride delayed seeking drug treatment until the eleventh hour, and she was arrested on drug-related charges only two months prior to the termination hearing. Also, McBride visited her infant son, who had been in foster care since he left the hospital, only nine times. Although McBride asserts a failure on DHS's part to provide reunification services, the evidence shows that McBride failed to take advantage of various services offered by DHS. We do not otherwise address McBride's argument with regard to services because she raises it for the first time on appeal. *Moore v. Ark. Dep't of Human Servs.*, 69 Ark. App. 1, 9 S.W.3d 531 (2000) (appellant's failure to appeal from final, appealable orders regarding DHS's efforts to provide services deprives appellate court of jurisdiction). As noted, McBride failed to challenge the trial court's independent, alternative grounds for termination, and therefore we are not left with a definite and firm conviction that a mistake was made.

With regard to the best-interest analysis, the evidence showed that there was potential harm in returning J.M. to McBride's custody. Although McBride testified that she could provide a safe home for J.M., there was evidence that drugs were being sold from her

apartment and that McBride made only last-ditch efforts to obtain treatment for her drug addiction. Armstrong testified that J.M. was adoptable and that a potential adoptive family had already been located. Accordingly, we cannot say that the trial court clearly erred in terminating McBride's parental rights.

Affirmed.

PITTMAN and VAUGHT, JJ., agree.

*Thomas Wilson*, for appellant.

*Tabitha Baertels McNulty*, County Legal Operations, and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.